# UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| KENT DAVID BURSTEIN, ) | Case No. 19-72463-FJS |
| *Debtor*. ) | |
| ) | |
| YVETTE NONTE, ) | |
| ) | APN 20-07016-FJS |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | |
| KENT DAVID BURSTEIN, ) | |
| ) | Chapter 7 |
| *Defendant*. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the Motion for Partial Summary Judgment filed by Yvette Nonte and the Motion for Summary Judgment filed by Kent David Burstein. The procedural history of the case is as follows.

Kent David Burstein ("Burstein") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on June 27, 2019. Yvette Nonte ("Nonte") filed a complaint on May 29, 2020 (the "Complaint"), requesting a determination that a confessed judgment entered in her favor against Burstein (the "Debt") is nondischargeable under 11 U.S.C. § 523(a)(15) as a debt to a former spouse owed in connection with a divorce and separation agreement. *See* Compl. ¶ 24, ECF No. 1. On July 1, 2020, Burstein filed a motion to dismiss the Complaint (the "Motion to Dismiss"). Mot. to Dismiss, ECF No. 6.

The Court convened a pre-trial conference on July 21, 2020, which the Court continued to

August 18, 2020, the same date as the hearing on the Motion to Dismiss. Following that hearing, the Court ordered Nonte and Burstein (collectively, the "Parties") to file a joint statement of facts and briefs in support of their respective arguments. Br. Order, ECF No. 26. The Court entered a memorandum opinion and order denying the Motion to Dismiss on March 3, 2021. Mem. Op., ECF No. 36; Order Den. Mot. to Dismiss, ECF No. 37. Thereafter, Burstein answered the Complaint. Answer, ECF No. 40. The Court reconvened the pre-trial conference on April 13, 2021, and set this matter for trial. Pre-Tr. Order, ECF No. 44.

On June 25, 2021, Nonte filed a motion for partial summary judgment and accompanying memorandum in support (collectively, the "Nonte Motion"). Pl.'s Mot. for Summ. J., ECF No. 47; Pl.'s Mem. of Law in Supp., ECF No. 50. Nonte requested summary judgment only on the issue of nondischargeability under § 523(a)(15) and reserved the liquidation of the nondischargeable debt for a later date. Tr. of Sept. 29, 2021 Hearing ("Hr'g Tr.") 21:14-21. On August 31, 2021, Burstein filed a brief in opposition to the Nonte Motion. Def.'s Opp'n Br., ECF No. 60. Burstein contemporaneously filed a cross motion for summary judgment and accompanying memorandum in support (collectively, the "Burstein Motion"). Def.'s Mot. for Summ. J., ECF No. 65; Def.'s Mem. of Law in Supp., ECF No. 66. Burstein requested summary judgment that the Debt does not fall within the § 523(a)(15) exception to discharge and is therefore dischargeable. Nonte filed a response in opposition to the Burstein Motion on September 22, 2021. Pl.'s Opp'n Br., ECF No. 73.

The Court heard arguments on both the Nonte Motion and the Burstein Motion on September 29, 2021 (the "Summary Judgment Hearing") and continued the trial generally pending resolution of the respective motions. *See* Hr'g Tr. 22:5-7. After consideration of the pleadings, briefs, and arguments made at the Summary Judgment Hearing, this matter is ripe for

2

determination.

## I. Facts

Pursuant to the joint stipulation of facts and the pleadings,[1] the Parties do not dispute the following material facts. Nonte and Burstein were married on October 22, 2004. Joint Stmt. ¶ 1, ECF No. 29. They were divorced on May 27, 2011. *Id*. ¶ 6. Around the same time, they entered into a Voluntary Separation and Property Settlement Agreement (the "PSA"). *Id*. ¶ 3. An accurate copy of the PSA is attached to the Complaint. *Id*. ¶ 4. Section 6 of the PSA, in relevant part, required Burstein to pay Nonte a portion of any cash distributions he received from his companies, Sektor Solutions, Inc. and Alliance Development, and provide her with access to related accounting documentation. Compl. at Ex. A § 6. The PSA was later incorporated, but not merged, with the divorce decree. Joint Stmt. ¶ 7. The Circuit Court for Montgomery County, Maryland entered the judgment for divorce on May 27, 2011. *Id.* ¶ 6.

Subsequently, Nonte filed a complaint against Burstein in the Circuit Court for Montgomery County, Maryland, commencing Case 388859V. *Id*. ¶ 10. In the Maryland state court complaint (the "State Court Complaint"), Nonte included counts for declaratory relief, breach of fiduciary duty, and breach of contract. *Id.*; *see also* Compl. at Ex. C. The common set of facts pleaded in support of all three counts related to Burstein's alleged failure to uphold his obligations to remit cash distributions to Nonte and to provide her with accounting documents pursuant to Section 6 of the PSA. *See* Compl. at Ex. C ¶¶ 3-19. Burstein did not dispute the validity of the copy of the State Court Complaint attached to the Complaint. Answer ¶ 13.

On May 13, 2015, Nonte and Burstein signed a settlement agreement resolving Case 388859V as well as "outstanding issues arising out of [the PSA]" (the "Settlement Agreement").

---

[1] The allegations of the Complaint that Burstein admitted in the Answer are additional undisputed facts. *See generally* Answer, ECF No. 40.

Joint Stmt. ¶ 12; Compl., at Ex. D. The Settlement Agreement required Burstein to pay Nonte a total of $700,000.00 in increments over a series of years, secure his payment obligation with deeds of trust in the amount of $700,000.00[2] on his real properties, and execute a confessed judgment note in favor of Nonte to evidence his payment obligation. Joint Stmt. ¶¶ 13-16; Compl. at Ex. D ¶¶ 9-14, 16. The Settlement Agreement provided that a $400,000.00 payment due from Burstein to Nonte "is a non-taxable event as per Section 6.A of the [PSA] regarding marital property." Compl. at Ex. D ¶ 27. In consideration of the foregoing, Nonte agreed to dismiss Case 388859V with prejudice. Joint Stmt. ¶ 16. Nonte and Burstein also agreed to "mutually release each other from any claims they may have arising out of the events addressed by the pending litigation and under Section 6.A through 6.I. of the [PSA]." Compl. at Ex. D ¶ 7. An accurate copy of the Settlement Agreement is attached to the Complaint. Joint Stmt. ¶ 13.

Burstein defaulted under the Settlement Agreement, which resulted in the Circuit Court for Montgomery County, Maryland entering a confessed judgment against Burstein on January 2, 2019 (the "Confessed Judgment"), in the principal amount of $284,849.60, plus attorney's fees of $1,500.00 and court costs of $165.00. *Id.* ¶¶ 19-20; *see also* Def.'s Mem. ¶ 29.

## II.    Conclusions of Law

### A.    Jurisdiction

Both the Nonte Motion and the Burstein Motion were filed under Federal Rule of Civil Procedure 56 as incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7056. As a § 523(a)(15) nondischargeability action, this matter is a core proceeding over which this Court has jurisdiction under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

---

[2] The joint statement of facts incorrectly claims that the total debt secured by the deeds of trust was $650,000.00, rather than the $700,000.00 set forth in the Settlement Agreement attached to the Complaint. *Compare* Compl. at Ex. D ¶ 16 *with* Joint Stmt. ¶ 14.

B.     Summary Judgment Standard

The standard for summary judgment motions is well established. Subsection (a) of Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citations omitted). Courts are also required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *See PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 119 (4th Cir. 2011). Cross motions for summary judgment do not alter the standard. *Terlecky v. Beneficial Ohio, Inc.* (*In re Little Key*), 292 B.R. 879, 881 (Bankr. S.D. Ohio 2003) (citing *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). Each motion will be decided on its merits and both Nonte and Burstein bear the initial burden as to their respective motions.

Here, as stated above, the Parties stipulated to a set of undisputed facts. *See generally* Joint Stmt. As a result, summary judgment is "particularly appropriate." *Eric D. Fein, P.C. & Assoc. v. Young* (*In re Young*), 425 B.R. 811, 813 (Bankr. E.D. Tex. 2010). Accordingly, the Court must determine, based on the undisputed facts, whether either party is entitled to judgment as a matter of law.

C.     Dischargeability of the Debt

The Complaint alleges the Debt is nondischargeable under 11 U.S.C. § 523(a)(15). *See*

5

Compl. ¶ 24. Section 523(a)(15) states that a debt owed to a "spouse, former spouse, or child of the debtor and not of the kind described in [§ 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record . . . ." is excepted from a discharge under Chapter 7 of the Bankruptcy Code. 11 U.S.C § 523(a)(15). In this case, Nonte seeks to prove that (1) the Debt is owed to her as Burstein's former spouse; (2) the Debt is not of the kind from § 523(a)(5); and (3) Burstein incurred the Debt in connection with the PSA.

One of the Bankruptcy Code's fundamental purposes is to offer debtors the legitimate opportunity to discharge their prepetition debts and obtain a "fresh start." *See Dominion Va. Power v. Robinson* (*In re Robinson*), 340 B.R. 316, 328 (Bankr. E.D. Va. 2006) (citing *KMK Factoring, L.L.C. v. McKnew* (*In re McKnew*), 270 B.R. 593, 617 (Bankr. E.D. Va. 2001)). The exceptions to discharge enumerated in § 523(a) limit this opportunity. Courts commonly construe these exceptions to discharge narrowly against the creditor and in favor of the debtor to preserve the "fresh start" policy. *Id.* at 329 (citing *Foley & Lardner v. Biondo* (*In re Biondo*), 180 F.3d 126, 130 (4th Cir. 1999)). Even so, courts must balance narrow construction against other policy considerations. *See In re Biondo*, 180 F.3d at 130 (stating that courts must "ensur[e] that perpetrators of fraud are not allowed to hide behind the skirts of the Bankruptcy Code") (citing *Cohen v. Cruz*, 523 U.S. 213 (1998)).

For instance, § 523(a)(5), which excepts from discharge any debt stemming from a domestic support obligation, contemplates the importance of protecting former spouses and children. *Robb-Fulton v. Robb* (*In re Robb*), 23 F.3d 895, 897 (4th Cir. 1994) (stating that the policy underlying § 523(a)(5) "departs from the general policy of absolution or fresh start in order to 'enforce an overriding public policy favoring the enforcement of familial obligation'") (quoting

6

*Sampson v. Sampson* (*In re Sampson*), 997 F.2d 717, 721 (10th Cir. 1993)).

Congress added § 523(a)(15) to the Bankruptcy Code to supplement § 523(a)(5), thereby broadening the scope of marital debts that are nondischargeable. Section 523(a)(15) "'lessen[ed] the chance that a divorce obligee's claims might slip through § 523(a)(5)'s cracks and be discharged unjustly.'" *Baum v. Baum* (*In re Baum*), No. 14-03283-5-DMW, 2016 WL 5360709, at *11 (Bankr. E.D.N.C. Sept. 23, 2016) (quoting *Dressler v. Dressler* (*In re Dressler*), 194 B.R. 290, 300 (Bankr. D.R.I. 1996)); *see also Sherman v. Proyect* (*In re Proyect*), 503 B.R. 765, 773 (Bankr. N.D. Ga. 2013) ("By enacting § 523(a)(15), Congress manifested its intent that 'a debtor should not use the protection of a bankruptcy filing in order to avoid legitimate marital and child support obligations.'") (quoting H.R. Rep. No. 103-835, at 54 (1994)). Congress then expanded the scope of § 523(a)(15) through the Bankruptcy Abuse Prevention and Consumer Protection Act's amendments to § 523(a)(15). *See Adam v. Dobin* (*In re Adam*), Adv. No. 12-01295-DS, 2015 WL 1530086, at *5 (B.A.P. 9th Cir. Apr. 6, 2015), *aff'd*, 677 F. App'x 353 (9th Cir. 2017). These amendments removed a balancing test previously present in § 523(a)(15), making it easier for former spouses to demonstrate the nondischargeability of debts under this section. *See id.* at *4 ("The evolution of § 523(a)(15) demonstrates Congress's intent to spread as large a net, and to include as many marriage dissolution-related claims[,] as possible, within this exception to discharge."); *Cozart v. Wilson* (*In re Wilson*), 608 B.R. 514, 521 (Bankr. Ariz. 2019) ("BAPCPA broadened the marital debt exceptions to discharge even further by amending § 523(a)(15) . . . ."). In view of the underlying public policy, courts around the country have recognized that § 523(a)(15) should be "broadly and liberally construed to encourage payment of familial obligations rather than to give a debtor a fresh financial start." *Hanson v. Brown* (*In re Brown*), 541 B.R. 906, 910-11 n.22 (Bankr. M.D. Fla. 2015) (collecting cases); *cf. In re Crosswhite,* 148

7

F.3d 879, 882 (7th Cir. 1998) (concluding that § 523(a)(5), which is supported by the same policy considerations as § 523(a)(15), ought to be construed "more liberally than other § 523 exceptions").

Notwithstanding the public policy considerations underlying § 523(a)(15), the party claiming the exception to discharge carries the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). Consequently, Nonte bears the burden of proving, by a preponderance of the evidence, that (1) Nonte is a former spouse of Burstein; (2) the Debt does not fall under 11 U.S.C. § 523(a)(5); and (3) the Debt was incurred in connection with the PSA.

(1)     *Nonte is a former spouse of Burstein.*

The Parties agree that Nonte is a former spouse of Burstein. Joint Stmt. ¶ 1. Accordingly, Nonte has satisfied her burden as to the first element.

(2)     *The Debt is not "of the kind from section 523(a)(5)."*

The Parties agree that the Debt is not a domestic support obligation. *See* Pl.'s Mem. of Law in Supp. at 8, ECF No. 50; Def.'s Mem. of Law in Supp. ¶ 35, ECF No. 66. Accordingly, Nonte has satisfied her burden as to the second element.

(3)     *The Debt was incurred in connection with a separation agreement.*

The Parties disagree regarding whether the Debt was incurred in connection with the PSA. As a result, the sole issue the Court must resolve is whether, based upon the undisputed facts, either Nonte or Burstein is entitled to judgment as a matter of law on this element.

Nonte argues that the Debt was incurred in connection with the PSA. Generally, Nonte's argument stems from the central point that "[b]ut for the fact that the Parties were married and then divorced, the debt would not exist." Pl.'s Mem. at 14. She further asserts that the relationship

8

between the Parties as former spouses has never changed such that the Debt could have arisen out of any legal obligation other than the PSA. *See id.* Nonte also points to more specific facts to support her position, including that the Settlement Agreement states that it resolves Case 388859V and "outstanding issues arising out of [the PSA] . . . entered into in connection with their divorce," numerous references to the PSA throughout the Settlement Agreement, and terms of the Settlement Agreement that are unique to debts of a marital nature. *Id.* at 11-12. Finally, Nonte contends that her initiation of Case 388859V, which resulted in the Settlement Agreement, was a permissible method under Maryland law to seek redress for Burstein's alleged noncompliance with the PSA. *Id*. at 9-11.

Burstein, on the other hand, maintains that the Debt was not incurred in connection with the PSA. In his view, to the extent Nonte contends the Settlement Agreement is connected to the PSA because the former is a modification of the latter, any such modification was impermissible under the terms of the PSA and whether there could have been a subsequent waiver of the PSA's anti-modification clause presents a genuine issue of material fact. Def.'s Mem. ¶ 12; Hr'g Tr. 5:17-6:19. Alternatively, Burstein argues that the Settlement Agreement is a new agreement, separate and distinct from the PSA, which extinguished the marital character of the Debt, necessarily severing any connection to the PSA. Def.'s Mem. ¶¶ 68, 72. In furtherance of this contention, Burstein relies on the release in the Settlement Agreement, which released Burstein from the substantive payment obligations set forth in the PSA, and argues that it eliminates any connection between the Settlement Agreement and PSA. *See id.* ¶¶ 71-72. He further relies on the plain language of the confessed judgment note and Confessed Judgment, pointing to the absence therein of any express references to the Parties' divorce or the PSA. *Id.* ¶¶ 41-43.

Having considered the Parties' arguments, and for the reasons set forth below, the Court

9

finds that there is no genuine issue of material fact and Nonte is entitled to judgment as a matter of law that the Debt is nondischargeable under § 523(a)(15) as a debt incurred in connection with the PSA.

The Bankruptcy Code does not define "in connection with" as it relates to § 523(a)(15). *Woosley v. Woosley*, Civil No. 3:09-0910, 2010 WL 500423, at *5 (M.D. Tenn. Feb. 5, 2010). The Court thus begins its inquiry with the language's plain meaning:

> [T]he word "connection" means to have a "causal or logical relation or sequence." *Connection*, Webster's Collegiate Dictionary (11th ed. 2012); *see also Connection*, Black's Law Dictionary (6th ed. 1990) (defining connection as "[t]he state of being connected or joined; union by junction, by an intervening substance or medium, by dependence or relation, or by order in a series."); *Connection*, The American Heritage Dictionary of the English Language (5th ed. 2011) (defining connection as "[o]ne that connects, a link; [a]n association or relationship; [t]he logical or intelligible ordering of words; [r]eference or relation to something else, context."). The phrase "in connection with a separation agreement, divorce decree, or other order of a court of record" therefore operates as a topical limitation, requiring that the debt be logically or causally related to [a separation agreement, divorce decree, or other order of a court of record].

*Carroll v. Bohrer* (*In re Bohrer*), 628 B.R. 676, 685 (Bankr. S.D. Cal. 2021) (last alteration added); *Santiago Velazquez v. Crespo Quinones* (*In re Crespo Quinones*), Adv. No. 19-00397 (EAG), 2021 WL 5173349, at *7 (Bankr. D.P.R. Nov. 3, 2021) (holding that the parties' divorce was the "but for" cause of the payments owed by the debtor to his former spouse). To determine whether a debt is logically or causally related to a separation agreement or divorce decree, a court must examine the debt's fundamental nature. *See Woosley*, 2010 WL 500423, at *7. Indeed, it is a "well-established principle of bankruptcy law that dischargeability must be determined by the substance of the liability rather than its form." *Pauley v. Spong* (*In re Spong*), 661 F.2d 6, 9 (2d Cir. 1981).

The following cases illustrate the meaning of the phrase "in connection with" under § 523(a)(15). First, in *Woosley*, the court determined that a debtor's post-divorce agreement to pay his former spouse a monthly sum in exchange for her interest in a business and the termination of

10

her employment with the business was "in every logical sense" connected to their separation agreement and divorce decree, through which the former spouse was awarded her interest in the business and the promise of employment. 2010 WL 500423, at *7. In arriving at this conclusion, the court found that the post-divorce agreement referenced and concerned the same subject matter as the separation agreement and divorce decree, the fundamental nature of the obligation in the post-divorce agreement remained the same notwithstanding the change in the obligation, and the circumstances of the case required that the debtor not be permitted to cause his former spouse to lose the benefit of the bargain upon which she relied to support herself and her children. *Id.* at *7-8. The court therefore determined that the debt was nondischargable. *Id.* at *8.

A similar scenario was presented in *Beale*, where a debtor argued that a debt to his former spouse was dischargeable because the parties entered into a post-divorce agreement that replaced one debt with another. *See Beale v. Kurtz* (*In re Beale*), 381 B.R. 727, 731 (S.D. Ind. 2008). Under the parties' property settlement agreement, they agreed that the debtor's former spouse would retain a vehicle and the debtor would refinance and be solely responsible for the debt secured by that vehicle. *Id.* at 730. The property settlement agreement also required the debtor to repay his former spouse for expenses she incurred relative to the marital home that the debtor retained. *Id.* Later, the debtor and his former spouse entered into a new agreement whereby the debtor would no longer be obligated on the home expense debt, would trade in the existing vehicle, and would be obligated on the debt for a replacement vehicle. *Id.* The Court determined that the post-divorce agreement did not change the fundamental nature of the debt and found that the debtor's obligation on the debt for the replacement vehicle was "practically speaking . . . a refinancing of the old loan." *Id.* at 732.

Finally, the United States Bankruptcy Court for the Southern District of West Virginia's

11

decision in *Raines* further illustrates the meaning of "in connection with" under § 523(a)(15). *See Kim v. Raines* (*In re Raines*), Adv. Pro. No. 3:19-ap-03008, 2021 WL 262113 (Bankr. S.D.W. Va. Jan. 19, 2021). In that case, the court held that a decretal judgment, twice removed from the debtor and his former spouse's divorce decree, was nondischargeable under § 523(a)(15). *Id.* at *3-4. Several years after his divorce and prior to the filing of his bankruptcy case, the debtor's former spouse initiated contempt proceedings against him for his failure to comply with their divorce decree, resulting in the entry of a decretal judgment in favor of the former spouse. *Id.* at *1. Several more years later, when the debtor failed to pay amounts due under the decretal judgment, the former spouse again initiated contempt proceedings and obtained a second decretal judgment against the debtor. *Id.* The court determined that the second decretal judgment "directly stem[med]" from the debtor's noncompliance with the parties' divorce decree and was thus nondischargeable under § 523(a)(15). *Id.* at *3.

      Here, like in the preceding case illustrations, there is a logical and causal relationship between the Debt and the PSA. Section 6 of the PSA set forth payment and documentary obligations from Burstein to Nonte related to Burstein's interests in Sektor Solutions, Inc. and Alliance Development. The State Court Complaint sought relief on declaratory judgment, breach of fiduciary duty, and breach of contract theories all based upon the common set of factual allegations that Burstein failed to comply with his obligations under Section 6 of the PSA.[3] The Settlement Agreement settled Case 388859V in its entirety and ultimately led to the entry of the Confessed Judgment against Burstein following his default in payments. Simply put, but for the Parties' entry into the PSA, there would be no Case 388859V, no settlement of Case 388859V, no

---

[3] Under Maryland law, Nonte's remedy for Burstein's alleged noncompliance with the PSA was not limited to a contempt action. Md. Code, Family Law § 8-105(a)(2). Rather, she was permitted to initiate a separate civil suit. *Id.*

confessed judgment note, no Confessed Judgment, and thus, no Debt.

The Settlement Agreement concerns the same subject matter as Section 6 of the PSA—namely, Burstein's payment obligations to Nonte on account of the division of Burstein's business interests—and contains express references to the PSA. The language of the Settlement Agreement also states that a $400,000.00 payment due to Nonte under the Settlement Agreement "is a non-taxable event as per Section 6.A of the [PSA] regarding marital property." Compl. at Ex. D ¶ 27. Thus, it is clear to the Court that the Settlement Agreement did not change the fundamental, marital nature of the obligation, it merely redefined how and when Nonte would receive payment and her remedy for nonpayment. This new remedy—the entry of the Confessed Judgment against Burstein—gave rise to the Debt.

The logical and causal relationship between the PSA and the Debt is unaffected by Burstein's complete release and discharge from his obligations under Section 6 of the PSA. There is no doubt that the Settlement Agreement released both Parties from any liability under the PSA. Even so, the Parties' release of any rights or obligations under Section 6 of the PSA does not change the character of the Debt or its origins in the PSA. Further, although the Court agrees with Burstein that it cannot decide on summary judgment whether the Parties waived the non-modification provision in the PSA when they entered into the Settlement Agreement, such a determination is not necessary. The logical and causal connection described above is simply not dependent upon the Settlement Agreement operating as a modification of the PSA. Instead, even if the Court accepts Burstein's contention that the Settlement Agreement created a new obligation that was separate and distinct from his obligations under Section 6 of the PSA, the Court need not conclude that this necessarily severs its connection to the PSA. Just like the monthly payment debt in *Woosley*, vehicle debt in *Beale*, and the judgment debt in *Raines*—all new, post-divorce

13

obligations of the debtors to their former spouses, which were nondischargeable because they directly related to the debtors' obligations under their separation agreements—the Debt in this case would not exist if not for Burstein's prior obligation to Nonte under the PSA. *See Woosley*, 2010 WL 500423, at *7; *Beale*, 381 B.R. at 730; *Raines,* 2021 WL 262113, at *3. It is likewise of no moment that the Confessed Judgment contained no findings by the Maryland Circuit Court or recital that the Debt was incurred in connection with a separation agreement or divorce. The absence of specific language in the Confessed Judgment does nothing to change the ultimate, "but for" cause of the Debt.

Further, courts typically only find debts between former spouses dischargeable in § 523(a)(15) actions when the parties' relationship changes at some point between the divorce and the incurrence of the debt. *See, e.g.*, *Floody v. Kearney* (*In re Kearney*), 433 B.R. 640, 647 (Bankr. S.D. Tex. 2010) (discussing the importance of analyzing the relationship of the parties in a § 523(a)(15) action); *Gilman v. Golio* (*In re Golio*), 393 B.R. 56, 62 (Bankr. E.D.N.Y. 2008) (finding a debt to be nondischargeable because "there was no landlord-tenant or other type of relationship between the [d]efendant and the [p]laintiff that would render the amounts awarded outside the scope of the [d]ivorce [j]udgment"); *Tracy v. Tracy* (*In re Tracy*), Case No. 06-40044, 2007 WL 420252, *3 (Bank. D. Idaho Feb. 2, 2007) (holding debts to be dischargeable because they arose from the parties' new landlord-tenant relationship and "subsequent dealings between the parties unrelated to the dissolution of the parties' marriage"). Thus, a change in relationship is an important consideration because it may break the link between a debt and a separation agreement or divorce decree. Notably, here, the Parties stipulated that their only relationship was as spouses and former spouses. Thus, there was no other type of non-marital relationship between Nonte and Burstein that could transform the fundamental nature of the Debt.

14

Burstein cautions the Court that finding a connection between the Debt and the PSA notwithstanding the intervening lawsuit, Settlement Agreement, and Confessed Judgment, suggests that a debt could remain connected to a separation agreement despite infinite new, post-divorce agreements. Def.'s Mem. of Law in Supp. ¶ 75, ECF No. 66; Hr'g Tr. 8:11-18. The hypothetical that Burstein submits is not presented by the facts of this case. In holding that the Debt is connected to the PSA, the Court is not deciding whether there may be a point where subsequent events cause too much attenuation for a debt to remain connected to a separation agreement.

Finally, the Court's conclusion comports with the public policy considerations underlying § 523(a)(15). It prevents Burstein from using the bankruptcy system to "avoid legitimate marital . . . obligations." *Sherman v. Proyect* (*In re Proyect*), 503 B.R. 765, 773 (Bankr. N.D. Ga. 2013) (quoting H.R. Rep. No. 103-835, at 54 (1994)).

Thus, for the reasons set forth above, the Court concludes that, based upon the undisputed facts, Nonte has satisfied her burden to prove that the Debt was incurred in connection with the PSA. Accordingly, Nonte is entitled to judgment as a matter of law that the Debt is nondischargeable under § 523(a)(15).

### D.    The Amount of the Debt

Nonte did not seek a determination of the amount of the nondischargeable Debt on summary judgment. Hr'g Tr. 21:15-17 (stating that Nonte reserved the determination of the amount of the nondischargeable Debt for a future hearing). Further, at the Summary Judgment Hearing, Burstein argued that the Court could not determine the amount of the Debt that is nondischargeable on summary judgment because the Settlement Agreement resolved all three counts of the State Court Complaint without attributing the amount awarded to Nonte to any

particular claim for relief. *Id.* 9:16-22. The Court disagrees with Burstein that the nature of the causes of action raised in the State Court Complaint has any relevance to the amount of the Debt that is nondischargeable under § 523(a)(15). The determination herein that the Debt was incurred in connection with the PSA is not dependent on the type or nature of the causes of action in the State Court Complaint, which all stemmed from a common set of factual allegations that Burstein failed to perform his obligations under the PSA and which were resolved by the Settlement Agreement.

Although the Parties did not request summary judgment as to the amount of the Debt, courts are empowered to enter summary judgment *sua sponte*. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). However, a court may only grant summary judgment *sua sponte* if notice "is sufficient to provide an adequate opportunity to demonstrate a genuine issue of material fact." *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989). Accordingly, the Court will determine the amount of the Debt that is nondischargeable on summary judgment *sua sponte* and will set hearing on this matter, so as to provide adequate notice to all parties.

### E. Conclusion

For the reasons stated in this Memorandum Opinion, the Court concludes that Nonte has met her burden as to all three elements under § 523(a)(15) and is entitled to judgment as a matter of law that the Debt is nondischargeable as a debt to a former spouse incurred in connection with a separation agreement. Accordingly, Nonte's Motion is granted, and Burstein's Motion is denied. The Parties shall bear their own attorney's fees and costs.

The Court will enter a separate Order consistent with the findings and conclusions contained in this Memorandum Opinion.

The Clerk shall deliver copies of this Memorandum Opinion to Steven L. Brown, counsel

for Yvette Nonte; and Thomas K. Plofchan, Jr., counsel for Kent David Burstein.

Entered this 24th day of March 2022, at Norfolk in the Eastern District of Virginia.

/s/ Frank J. Santoro
FRANK J. SANTORO
Chief United States Bankruptcy Judge

Entered On Docket: Mar 24 2022